## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEROME C.,

*Plaintiff,*

vs.

Case No. 5:23-cv-4085-EFM

**MARTIN O'MALLEY**,
Commissioner of Social Security,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Jerome C. brings this action seeking review of the final decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"), denying her application for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff alleges that the administrative law judge ("ALJ") erred in several ways: (1) failing to properly asses Plaintiff's past work as a "composite job"; (2) relying on the Vocational Expert's testimony that Plaintiff could perform his past relevant work as generally performed in the national economy; (3) failing to treat a report by an examining physician as a medical opinion; and (4) failing to properly assess the medical opinion of Plaintiff's treating physician.  Because the Court finds the ALJ committed no legal errors and his decision was supported by substantial evidence, the Court affirms the Commissioner's decision.

# I.     Factual and Procedural Background

## A.     Plaintiff's medial history

Plaintiff is a man of advanced age who worked as a general store clerk from 2015 to 2019. Because it was a small store, his duties included cleaning, stocking shelves, shoveling snow, and performing inventory, as well as more traditional cashier responsibilities such as operating the cash register.  At least once, his job required him to lift heavy objects in excess of 100 pounds.

On March 27, 2019, Plaintiff ceased working.  He suffered a stroke in April 2019.  Since then, he has not engaged in substantial gainful activity.  On August 19, 2020, Plaintiff applied to disability benefits.  The Commissioner denied the claim both initially and upon reconsideration, leading Plaintiff to file a written request for a hearing.  On August 18, 2022, the hearing took place via telephone before an ALJ.  Plaintiff was represented by counsel during the hearing.

During the hearing, Plaintiff testified that he can lift 15 pounds, stand for 10 minutes at a time, sit for 30 minutes at a time, is married, lives with wife/son/brother, can perform light housekeeping including laundry, prepares meals, drives short distances, and goes to a store once a week.  Furthermore, a Vocational Expert ("VE") testified that—based on Plaintiff's description of his past job—his job as a store clerk matched the criteria of a Cashier II as defined by the Dictionary of Occupational Titles ("DOT").  However, the VE did note that Plaintiff performed extra work not normally performed by those working a Cashier II position, such as lifting heavy objects, shoveling snow, etc.  Upon the ALJ asking the VE hypothetical questions based on Plaintiff's physical limitations, the VE testified that Plaintiff could work as a Cashier II as it is generally performed but not as he actually performed in his last job.  Plaintiff's counsel did not develop the VE's testimony further except to ask if Plaintiff could perform work even if he had to take off 20% of each workday.

On August 30, 2022, the ALJ issued his written decision denying Plaintiff's claim for disability benefits.  First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 27, 2019, the alleged onset date of disability.  The ALJ then found Plaintiff had the severe physical limitations of diabetes mellitus with neuropathy, diabetic ulcer of the left foot, acute cerebral vascular accident/stroke, lumbar scoliosis with degenerative disc disease, and obesity.  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the designated list of impairments under the Act's regulations.  In setting forth Plaintiff's residual functioning capacity ("RFC") as follows, the ALJ concluded that Plaintiff can:

> perform light work as defined in 20 CFR 404.1567(b) in that the claimant can lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday.  The claimant can occasionally climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs, stoop, kneel, crouch, crawl, and balance as defined by the SCO.  The claimant can occasionally work at unprotected heights or with moving mechanical parts and vibration. The claimant can frequently handle, finger and feel bilaterally.  The claimant can occasionally use foot controls bilaterally.

In formulating Plaintiff's RFC, the ALJ reviewed and discussed the medical evidence and multiple medical opinions presented in the record.  Only a few are relevant here.  First, the ALJ reviewed Dr. Logan J. Cooper's medical report.  Dr. Cooper examined Plaintiff in February 2020.  Dr. Cooper reported that Plaintiff exhibited a wide-based antalgic gait, moderate difficulty with heel and toe walking, moderate difficulty squatting and arising from a seated position; and moderate difficulty hopping, and limited range of motion of the lumbar spine, hips, knees, and right shoulder.[1]  Although he discussed these findings in the section of his decision dealing with

---

[1] Although the ALJ did not mention it in his written decision, Dr. Cooper also stated that Plaintiff was incapable of handling his own funds.  This statement occurred without explanation in the midst of other observations

medical evidence, the ALJ concluded that Dr. Cooper did not present any medical opinions about Plaintiff's physical functioning.

Also relevant for the purposes of this Order is the medical opinion submitted by Dr. Scott Teeter, Plaintiff's treating physician for the last 22 years.   Addressing Plaintiff's physical limitations, Dr. Teeter opined that Plaintiff could stand/walk for no more than two hours each day, could only sit for one hour, could occasionally lift 10 pounds or less, could rarely lift 20 pounds, and could never lift 50 pounds.  He also opined that Plaintiff could only rarely twist or stoop and could never crouch, squat, or climb stairs.  Finally, Dr. Teeter concluded that Plaintiff could use his hands for only 10% of the workday, his fingers for only 1% of the workday, and reach for only 5% of the workday.   Dr. Teeter concluded that Plaintiff was incapable of substantial gainful activity.

The ALJ examined both the supportability of Dr. Teeter's report and its consistency with the medical, finding it lacking in both categories.   Specifically, the ALJ noted that besides diminished sensation in the bilateral feet, Dr. Teeter's treatment reports showed "no other remarkable findings."  Rather, Dr. Teeter routinely reported that Plaintiff was ambulatory, not in any acute distress, and had intact motor strength.  Furthermore, the ALJ found that Dr. Teeter's opinion—essentially holding Plaintiff could not work—was inconsistent with Plaintiff's own testimony regarding his symptoms and the medical record as a whole.

Ultimately, the ALJ concluded—relying on the VE's testimony—that Plaintiff could perform his past relevant work of a Cashier II as it is generally performed in the national economy.

---

noting Plaintiff's mental functioning was normal.  Based on the Court's review of the record, the hearing transcript, and other medical opinions, it appears that Plaintiff's mental capacity has never been at issue.

Based on that conclusion, the ALJ found that Plaintiff was not disabled under the Act. Accordingly, the ALJ denied Plaintiff's application for disability benefits.

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, which denied his appeal on July 26, 2023.  On September 25, 2023, Plaintiff filed the present action in this Court. This matter has been fully briefed and is now ripe for ruling.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[2]  The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is disabled under the Act only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6]  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy,

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

considering her age, education, and work experience."[7]  The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[10]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[11]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then whether she can generally perform other work that exists in the national economy.[12]  The claimant bears the burden in steps one through four to prove a disability that prevents the performance of

---

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

her past relevant work.[13]  The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[14]

### III.    Analysis

Plaintiff offers two primary objections to the ALJs decision.  First, Plaintiff argues that the ALJ legally erred at step four of the Act's analysis in relying on the VE's testimony that Plaintiff's past relevant work met the definition of Cashier II.  Instead, Plaintiff believes the ALJ should have concluded that he worked a composite job without an equivalent in the DOT definitions.  Second, Plaintiff contends that the ALJ legally erred in evaluating the medical reports submitted by Dr. Cooper and Dr. Teeter.  The Court will address each objection in turn.

**A.    The ALJ properly found Plaintiff was not disabled at step four.**

Plaintiff's step four argument presents two issues, one legal and one factual.  First, the legal question—did the ALJ have a duty to address whether Plaintiff's prior job was a composite job despite Plaintiff never raising the issue in his filings or at the hearing?  Second, the factual question—does substantial evidence support the ALJ's finding that Plaintiff's past work comported with the Cashier II description?

First, Plaintiff argues that the ALJ committed a legal error by failing to address whether his past relevant work was a composite job without a DOT counterpart.  Generally, ALJs should "not evaluate [a composite job] at the part of step 4 considering work 'as generally performed in the national economy.'"[15]  If Plaintiff's work was a composite job, then the ALJ erred by

---

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

[15] POMS DI 25005.020(B), 2011 WL 4753471.

considering whether Plaintiff could perform the job of a Cashier II "as generally performed in the national economy."

However, Defendant points out that Plaintiff did not raise the issue of whether he worked a composite until Plaintiff's appeal to the SSA Appeal Council. Accordingly, the issue was never discussed at the hearing before the ALJ, nor in any of Plaintiff's previous filings. Defendant further argues that the burden rested with Plaintiff to raise the issue by asking question of the VE during the hearing. The Court agrees.

Not only is the burden on Plaintiff to establish steps one through four, the Tenth Circuit has specifically admonished plaintiffs in Social Security cases to develop the record by asking additional questions when necessary.[16] To be sure, "the ALJ has a duty to ensure that an adequate record is developed during the disability hearing *consistent with the issues raised*."[17] By implication, an ALJ has no duty to address issues not raised by a plaintiff.[18] Rather, "the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development."[19] If the plaintiff's counsel fails to raise any issues with the ALJ, the Court is precluded from examining those issues on appeal.[20]

Here, because Plaintiff's counsel failed to raise the issue of whether Plaintiff worked a composite job, the ALJ did not err by omitting any discussion of the issue during Plaintiff's

---

[16] *See Garcia v. Comm'r, SSA*, 817 F. App'x 640, 649 (10th Cir. 2020).

[17] *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (emphasis added) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (10th Cir. 2007)).

[18] *See id.*

[19] *Id.* (further citation and quotations omitted).

[20] *See Gay v. Sullivan*, 986 F.2d 1336, 1340 n.2 (10th Cir. 1993) ("Counsel could have probed the witness about the source's reliability and acceptance in the profession, but he did not do so, and now our assessment of such matters is effectively foreclosed."); *see also Garcia*, 817 F. App'x at 649 (quoting *Gay*).

-8-

disability hearing.  Plaintiff bore the burden to raise that issue and he chose to not raise it. Therefore, the Court will not grant remand on this ground.

Even if the ALJ were required to address issues never raised by counsel, it is clear that substantial evidence supports his finding that Plaintiff's job was equivalent to a Cashier II.  Here, the VE testified that despite the extra requirements, Plaintiff's past relevant work fit under the category of Cashier II.   It is inarguable that the VE's unchallenged testimony constituted substantial evidence in support of the ALJ's decision.[21]  Furthermore, SSR 82-61(3) recognizes that "[a] former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy."[22]  Therefore, determining that a position matches a DOT category despite the presence of extra duties involved in the actual performance of that job presents no legal error. And, as the ALJ concluded in this case, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'"[23]

In sum, Plaintiff fails to show that the ALJ committed any legal error in applying step four. Accordingly, the Court affirms the Commissioner's decision as to step four.

---

[21] *See Lately v. Colvin*, 560 F. App'x 751, 755 (10th Cir. 2014) ("Moreover, the VE specifically stated that these jobs comported with the descriptions contained in the DOT.  Consequently, there is substantial evidence supporting the ALJ's decision.").

[22] 1982 WL 31387, at *2.

[23] *Id.*

**B.     The ALJ did not err in addressing statements by Dr. Cooper and Dr. Teeter.**

Plaintiff further claims that the ALJ erred by (1) failing to characterize Dr. Cooper's medical report as a medical opinion and (2) giving little weight to Dr. Teeter's medical opinion.

*1.     Dr. Cooper*

First, Plaintiff argues that the ALJ failed to properly treat the statements of Dr. Cooper as a medical opinion.  Defendant responds by arguing that Dr. Cooper failed to express a medical opinion in his report, and that the findings therein constitute objective or other medical evidence under 20 C.F.R. § 404.1513(a)(1) and (3), respectively.

Under 20 C.F.R. § 404.1520c, ALJs must "articulate how [they] considered the medical opinions" when addressing a person's disability claims.[24]  For each medical opinion presented by the parties, the ALJ must specifically address the most important factors relevant to persuasiveness: supportability and consistency.[25]  Thus, ALJs must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions."[26]

However, not every fact contained in a medical report constitutes a medical opinion. Rather, 20 C.F.R. § 404.1513 defines "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities."[27]  The regulation further

---

[24] 20 C.F.R. § 404.1520c(a).

[25] *Id.* § 404.1520c(a).

[26] *Id.* § 404.1520c(b)(2).

[27] *Id.* § 404.1513(a)(2); *see also id.* § 404.1513(a)(2)(i)–(iv) ("(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.").

defines "objective medical evidence" as "medical signs, laboratory findings, or both."[28]  The Act's regulations also define "signs" as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements."[29]  Finally, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."[30]

The parties agree that the ALJ did not address the supportability and consistency factors in examining Dr. Cooper's report.  Indeed, the ALJ spent very little time discussing the report at all, except to recite Dr. Cooper's observations.  But the ALJ explained his treatment of Dr. Cooper's report by stating it "did not provide any opinions on the claimant's physical functioning."

Having reviewed Dr. Cooper's report, the Court agrees with the ALJ that Dr. Cooper did not express any medical opinions as defined by 20 C.F.R. § 404.1513(1).  His report offers no statements about what Plaintiff can still do despite his impairments. Dr. Cooper offers no opinion on what activities Plaintiff can no longer perform.[31]  Instead, the report states Dr. Cooper observed abnormalities, which constitute medical signs as well as "other medical evidence."  But at no point does Dr. Cooper's report cross the line from observation to opinion by delineating Plaintiff's present capabilities or limitations.  Because Dr. Cooper's report definitionally does not constitute

---

[28] *Id.* § 404.1513(a)(1).

[29] *Id.* § 404.1502(g).

[30] *Id.* § 404.1513(a)(3).

[31] The Court notes that to extent Dr. Cooper's statement about Plaintiff's inability to handle his own money contemplates a limitation, it does not address Plaintiff's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  *See* 20 C.F.R. § 404.1513(a)(2)(ii).  Therefore, it is not a "medical opinion" as defined by § 404.1513(a)(2).

a medical opinion under SSA regulations, the ALJ in this case had no duty to follow SSA regulations about the treatment of medical opinions for that report. Plaintiff's argument fails on this ground.

     *2.    Dr. Teeter*

     Plaintiff's final argument is that the ALJ "committed significant legal error" in evaluating Dr. Teeter's opinion by (1) substituting his own opinion for that of Dr. Teeter's and (2) ignoring evidence contrary to his opinion. Beyond long string cites to opinions from various circuits with generalized parentheticals, Plaintiff offers little in the way of law, argument, or analysis to support his position.

     First, Plaintiff claims the ALJ substituted his medical judgment for that of Dr. Teeter's, an argument which targets whether the ALJ properly analyzed the supportability factor for Dr. Teeter's opinion.[32] Regarding supportability, the ALJ found that the severe limitations urged by Dr. Teeter were not supported by the records from Dr. Teeter's previous examinations. Indeed, "other than diminished sensation in the bilateral feet," Dr. Teeter's records showed "no other remarkable findings." Therefore, the ALJ found that to the extent Dr. Teeter advocated for the more severe limitations, that opinion was unsupported.

     Upon reviewing the record, the Court agrees with the ALJ that Dr. Teeter's examination records do not support the extreme limitations urged in his opinion. And while Plaintiff may differ with the ALJ as to what the term "remarkable" means, the fact remains that none of Dr. Teeter's treatment records reflect the serious limitations he urges in his opinion. The Court therefore

---

     [32] *See Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 186 (10th Cir. 2018) ("Ms. Romo argues this demonstrates that the ALJ substituted his medical judgment for that of Dr. Cutter. We disagree. The ALJ simply determined that Dr. Cutter's sitting, standing, and walking limitations were not supported by objective evidence, which is a legitimate basis for the ALJ to afford the opinion less weight.").

concludes that substantial evidence supports the ALJ's determination that Dr. Teeter's opinion lacked supportability.   As stated above, when substantial evidence supports the ALJ's determination that a medical opinion lacks supportability, the ALJ does not commit legal error in affording little weight to that opinion. Plaintiff's unexplained and unconvincing blanket claim of legal error is insufficient for the Court to overturn the ALJ's decision.

Second, Plaintiff asserts that the ALJ impermissibly ignored medical evidence that was consistent with Dr. Teeter's limitations.  The Tenth Circuit has made clear that:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.[33]

Here, Plaintiff claims that the ALJ ignored Dr. Cooper's report because it showed Plaintiff having a wide and antalgic gait, limping to both sides, as well as moderate difficulty with heel to toe walking, squatting, arising from the sitting position, and hopping.  But the ALJ described each of these pieces of evidence in his decision, albeit in the medical evidence section.   And Dr. Cooper's report is controverted by other evidence in the record showing "essentially normal consultative examinations showing normal gait/normal strength/bend-squat-stand on tiptoes and heels without any problems/dexterity in hands preserved/etc."  Therefore, Plaintiff must show that Dr. Cooper's medical evidence is significantly probative of the extreme limitations urged by Dr. Teeter.  Otherwise, Plaintiff cannot show that the ALJ legally erred by omitting any discussion of Dr. Cooper's evidence when discussing Dr. Teeter's medical opinion.

---

[33] *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (further citation omitted); *see also Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (noting that when ALJ discusses medical evidence in detail and that evidence does not conflict with ALJ's conclusions, any need for ALJ to expressly analyze evidence is weakened).

Plaintiff, however, offers neither argument nor explanation as to how these findings are significantly probative of Dr. Teeter's opinion. And this Court "will not develop an argument for [Plaintiff]."[34] In short, the Tenth Circuit requires nothing more than what the ALJ did here.[35] That is, "the ALJ considered all of Dr. [Teeter]'s medical evidence, as well as the record as a whole, and gave good reasons for the weight he afforded Dr. [Teeter]'s opinions."[36] Therefore, Plaintiff fails to demonstrate any legal error in the ALJ's treatment of Dr. Teeter's opinion.

Because the Court rejects each of Plaintiff's stated objections, the Court affirms the ALJ's decision to find that Plaintiff was not disabled under the Act.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 10th day of April, 2024.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[34] *Mays*, 739 F.3d at 576.

[35] *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

[36] *Id.*